IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WATSON CARPET & FLOOR COVERING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:09-cv-487 |
| ) | |
| MOHAWK INDUSTRIES, INC., CARPET DEN, ) | Judge Thomas A. Wiseman, Jr. |
| INC., and RICK McCORMICK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION #2

Plaintiff Watson Carpet and Floor Covering, Inc. ("Watson") filed this action against defendants Mohawk Industries, Inc. ("Mohawk"), Rick McCormick, and Carpet Den, Inc. ("Carpet Den") (collectively, "Defendants"), pursuant to the Clayton Act, 15 U.S.C. § 15, to recover for alleged injuries to its business resulting from the Defendants' purported violation of the Sherman Act, 15 U.S.C. § 1 *et seq.* Presently before the Court is the Motion for Summary Judgment or, in the Alternative, Judgment on the Pleadings (Doc. No. 17) filed by defendants Carpet Den and McCormick, asserting that Watson's claims are barred by the express terms of a release executed by Watson in March 2007 and, alternatively, that they are barred by the statute of limitations.

For the reasons set forth herein, the Court finds that any claims asserted in the Complaint that accrued prior to March 2007 are barred by the release agreement, and that any remaining claims are subject to dismissal under the standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as discussed in greater detail in the contemporaneously filed Memorandum Opinion addressing co-defendant Mohawk Industries' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The present motion (Doc. No. 17) will therefore be granted.

I.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has carried this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts based on evidence in the record showing that there is a genuine issue for trial. *Id.*; *accord* Fed. R. Civ. P. 56(e)(2).

After the parties have presented the evidence, "the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the" non-moving party. *Anderson*, 477 U.S. at 252.

## II.     FACTUAL BACKGROUND

Plaintiff Watson is an independent dealer of carpet and other floor coverings in the Nashville area (*i.e.*, in Davidson, Williamson, Rutherford, Wilson and Sumner Counties). It sells carpet and other floor coverings to homebuilders and retail customers, and installs these floor coverings in its customers' homes. Defendant Carpet Den is similarly an independent dealer of carpet and other floor coverings in the Nashville area and is Watson's direct competitor. Defendant McCormick is the co-owner and

president of Carpet Den. Defendant Mohawk is a carpet manufacturer that sells carpet to both Watson and Carpet Den, among other carpet dealers in the Nashville area.

In June 1999, Watson filed suit against Mohawk, Carpet Den and McCormick in Williamson County Circuit Court (the "state-court action") alleging that McCormick, on behalf of Carpet Den, and Mohawk had entered into an agreement in 1998 pursuant to which Mohawk would agree not to sell certain carpet to Watson in an effort to shut down Watson's business. Watson also alleged that the Defendants engaged in other behavior designed to harm Watson besides the refusal to sell. However, in the state-court action, Watson sought damages related only to the Defendants' destruction of Watson's relationship with its former customer, Centex, based on Mohawk's refusal to sell Portico carpet to Watson for the purpose of supplying Centex's order. Watson brought claims against the Defendants for civil conspiracy and intentional interference with business relationship under Tennessee law.

Defendants initially obtained summary judgment on Watson's claims in the state-court action. The Tennessee Court of Appeals reversed and remanded based on the Tennessee Supreme Court's intervening decision adopting a cause of action for intentional interference with business relations. *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, No. M2000-03101-COA-R3CV, 2002 WL 562577 (Tenn. Ct. App. April 15, 2002). The matter went to trial and Watson prevailed, obtaining a judgment for compensatory and punitive damages in excess of $5,000,000. On appeal, the Tennessee Court of Appeals reversed the judgment against Mohawk on the grounds that Mohawk's refusal to deal with Watson was privileged, and therefore precluded liability for tortious interference or conspiracy. The Court of Appeals also reversed in part the judgment against Carpet Den and McCormick, reasoning that those defendants could not conspire with Mohawk to do something Mohawk was privileged to do. The Court, however, affirmed the judgment against Carpet Den and McCormick for tortious interference with business relations. *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169 (Tenn. Ct. App. 2007).

Rather than appeal, Watson, Carpet Den and McCormick entered into a confidential Settlement Agreement and Release ("Settlement Agreement") on March 15, 2007, pursuant to which Watson agreed to release all claims it might have against McCormick and Carpet Den, including but not limited to those asserted in the state-court action.

In support of Watson's opposition to the motion for summary judgment, Johnny Watson, President and sole shareholder of Watson Carpet, has submitted a declaration in which he avers that, in May of 2007—several months after execution of the Settlement Agreement—he was having a lunch meeting at a local restaurant with two principles of Wieland Homes, when the General Manager and Vice President of Carpet Den, Keith Earp, "interrupted the meeting and started making gestures and mouthing words" to the Wieland representatives while Johnny Watson's back was turned. (Doc. No. 30, Watson Decl. ¶ 4.) A little later, as Johnny Watson and the Wieland representatives were leaving the restaurant, Earp "looked in Watson's direction and made a gesture of pointing two fingers at his eyes and then pointing them at [Watson], and mouthed the words 'I'm watching you.' In the same motion, [Earp] then moved his hand across in front of his throat in a throat cutting motion, as if to say 'stop it' or perhaps something worse." (Watson Decl. ¶ 5.) Despite Earp's antics, Wieland Homes ultimately chose to use Watson as its dealer and submitted orders for carpet in May of 2007. Mohawk, however, refused to sell to Watson the carpet it needed to supply Wieland's needs. (Watson Decl. ¶ 6.)

Watson also submits a declaration from a customer, Joel Tuck, construction manager for the St. Martin Square Condominium Development, who avers that in October 2005, after he contacted Watson to discuss the possibility of having Watson serve as the flooring contractor for that Development, "various employees of Carpet Den started calling [him] and attempting to persuade [him] not to use Watson Carpet on the project." (Doc. No. 31, Tuck Decl. ¶ 4.) The Carpet Den employees allegedly called numerous times, made derogatory comments about Watson, and went so far as to claim that Watson would not be able to handle the project or would handle it poorly and might not even be in business long enough to finish it. (Tuck Decl. ¶ 4.) Tuck nonetheless decided to retain Watson, Watson was able to supply the carpet needed for the St. Martin Square project, and Tuck was pleased with the work done on the project. (Tuck Decl. ¶ 5.)

### III.    ANALYSIS AND DISCUSSION

Defendants Carpet Den and McCormick (collectively, the "Carpet Den Defendants") have now filed their motion asserting that they are entitled to judgment in their favor as to all of Watson's claims on the basis of the release agreement executed by Watson on March 15, 2007. Alternatively, the Carpet

Den Defendants assert that they are entitled to judgment on the pleadings on the grounds that the plaintiff's claims against them are barred in their entirety by the statute of limitations.

### A. The Effect of the Settlement Agreement and Release

Johnny Watson, on behalf of Watson, executed a Settlement Agreement and Release on March 15, 2007. The Settlement Agreement states that as consideration for a confidential sum of money paid to Watson by McCormick and Carpet Den, Watson agreed in pertinent part as follows:

> Upon execution of this Agreement by the parties and the payments described herein, Watson's Carpet agrees to forever release and discharge McCormick and Carpet Den . . . from and against any and all claims, rights, assertions, demands, damages, disputes, agreements, actions and causes of action, which it may have against them whether such claims are contingent or actual, anticipated or unanticipated, and of whatever kind or nature, including, but not limited to, those claims and potential claims that were brought or could have been brought in the [state-court action] . . .

(Doc. No. 20-1, Ex.1 to McCormick Decl., at 2.) The Agreement further provides that it shall be interpreted under Tennessee law.

In Tennessee, a general release "covers all claims between the parties which are in existence and within their contemplation" at the time the agreement is executed. *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 654 (Tenn. Ct. App. 1976). Thus, if a party files suit based essentially on the same allegations as those covered by a general release, the claims are barred because they existed and were within the parties' contemplation at the time of the release. *Id.* The Carpet Den Defendants argue that the Complaint does not allege any action taken by the Carpet Den Defendants at any time after 1999 and, therefore, that it does not assert any cause of action against the Carpet Den Defendants that would not be covered by the March 15, 2007 Settlement Agreement.

In response, Watson relies upon the affidavit by Johnny Watson alleging that in May 2007 Keith Earp engaged in conduct that can only be described as bizarre and inappropriate, interrupting Johnny Watson's meeting with representatives from Wieland Homes. Watson asserts that Earp's conduct, in conjunction with Mohawk's refusal to sell Watson the carpet it needed to service the Wieland account which occurred in May or June 2007, constituted a new cause of action that was not in existence at the time the release was signed. Further, Watson alleges that action by a conspirator (Mohawk) is imputed to the co-conspirators and thereby gives rise to liability on the part of all of conspirators.

The Court agrees that by signing the Settlement Agreement, Watson effectively released any claims it had against the Carpet Den Defendants related to the subject-matter of the state-court action that had accrued by the effective date of the Agreement. The Court therefore finds that the Carpet Den Defendants are entitled to summary judgment in their favor on that basis as to all claims that accrued prior to March 31, 2007.

With respect to the activities that allegedly occurred in May 2007, those acts are neither covered by the terms of the Settlement Agreement nor are they barred by the four-year statute of limitations. Notwithstanding, the Court has already considered Defendant Mohawk's Motion to Dismiss and concluded that the claims against Mohawk based on the May 2007 refusal to deal must be dismissed under the *Twombly* pleading standard because the Complaint fails to set forth sufficient facts which "affirmatively and plausibly suggest," *Stalley ex rel. U.S. v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citing *Twombly*, 550 U.S. at 557), the existence of a § 1 Sherman Act conspiracy. Rather, at best, the facts asserted are "merely consistent with" such a right. *Twombly*, 550 U.S. at 557. It follows that, if the claims against Mohawk are deficient, then the claims against the Carpet Den Defendants are likewise deficient. The Complaint does not contain any factual basis for imputing Mohawk's refusal to deal to the conspiracy, much less to the Carpet Den Defendants. Moreover, even accepting as true Watson's version of events, the fact that Keith Earp was making strange gestures and faces at Johnny Watson (or behind his back) while Mr. Watson was meeting with Wieland's representatives in May 2007 does not, by itself, suggest that Carpet Den was participating in a conspiracy with Mohawk.

Watson raises an additional argument which is not persuasive here: that the Carpet Den Defendants have an affirmative burden of proving withdrawal from the conspiracy. (Doc. No. 29, at 24.) The cases upon which the plaintiff relies for that proposition (*United States v. McLernon*, 746 F.2d 1098, 1114 (6th Cir. 1984); *Moron's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999)) are inapposite here where the Plaintiff, under *Twombly*, has failed to sufficiently plead a continuing conspiracy. The case law is clear that the burden of proving withdrawal is only shouldered by the defendant when the defendant posits withdrawal as an affirmative defense. The burden of proving such an affirmative defense does not arise until the plaintiff successfully establishes a *prima facie* claim for conspiracy. In this case, none of the defendants poses withdrawal as an affirmative defense, nor are

their respective motions premised upon a theory of withdrawal. Instead, they argue that the allegations in the Complaint and the factual evidence mustered by the plaintiff are insufficient to support an inference that the actions taken in 2007 were in furtherance of the conspiracy allegedly formed in 1998.

The Court agrees. In its essence, the Complaint alleges the formation of a conspiracy in 1998 and various activities in furtherance of that conspiracy that gave rise to a lawsuit filed in 1999. That lawsuit was not resolved until 2007 by the decision of the Tennessee Court of Appeals (dismissing the claims against Mohawk) and by a subsequent Settlement Agreement between Watson and the Carpet Den Defendants. Otherwise, the Complaint, in conclusory fashion, alleges that Mohawk engaged in three separate refusals to deal with Watson in 2005, 2006 and 2007, allegedly in furtherance of the 1998 conspiracy. In light of the bad blood between these parties unsurprisingly engendered by a long and acrimonious state-court lawsuit, the acts alleged are simply insufficient to support an inference that the Carpet Den Defendants took any overt action in furtherance of the alleged 1998 conspiracy with Mohawk. Further, because the allegations against Mohawk for conspiracy are insufficient as a matter of law, it stands to reason that the claims against Carpet Den and McCormick must also fail, as Carpet Den cannot have conspired with itself.

**IV.     CONCLUSION**

The Carpet Den Defendants' Motion for Summary Judgment (Doc. No. 17) will therefore be granted. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge